UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GREGORY BUNCHE,

    Plaintiff,

v.                                        Case No:   6:16-cv-1456-Orl-41TBS

ABC LANDCLEARING AND
DEVELOPMENT, LLC,

    Defendant.

### REPORT AND RECOMMENDATION[1]

    This matter comes before the Court on the parties' Second Amended Joint Motion for Approval of Settlement (Doc. 37). On August 15, 2016, Plaintiff Gregory Bunche sued his former employer, Defendant ABC Landclearing and Development, LLC, for unpaid minimum and overtime wages, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Doc. 1). Defendant is engaged in the business of knocking down and clearing structures (Id. at ¶ 8). Plaintiff worked for Defendant as an hourly paid dump truck driver from May 2015 through April 2016 and was responsible for delivering "rock and stone to customers within the Central Florida area" (Id. at ¶¶ 3-4). He alleges that he was not paid the minimum wage for all hours worked and was not paid time and a half of his regular rate for all hours worked over 40 hours per week (Id. at ¶¶ 14-15). Defendant denies all allegations, asserts eight affirmative defenses, and brought a counterclaim against Plaintiff (Doc. 7). The counterclaim alleged that while using Defendant's 1994 Honda ACC vehicle, Plaintiff's negligence caused a crash which damaged the vehicle

---

[1] On June 30, 2017, the district judge referred this motion to the undersigned for the issuance of a report and recommendation (Docket).

(Id., at 6-7). Plaintiff moved to dismiss the counterclaim on the ground that it was a permissive claim for which independent jurisdiction had not been established (Doc. 20). Defendant failed to respond to the motion within the time allowed by the Court and I construed the motion as unopposed (Doc. 21 at 1-2). On March 1, 2017, I recommended that the district judge grant Plaintiff's motion and dismiss Defendant's counterclaim for lack of jurisdiction (Id. at 5). On April 24, 2017, the district judge adopted my report and recommendation and dismissed Defendant's counterclaim (Doc. 22).

On May 6, 2017, the parties requested that the Court appoint a federal magistrate judge to mediate the case (Doc. 23). The parties' request was granted and a mediation/settlement conference date was set (Doc. 25). Before the mediation conference convened, the parties announced that they had reached a settlement (Doc. 29).[2] The parties filed their original settlement agreement on June 6, 2017 (Doc. 30) and on June 7, 2017, I expressed concern over several terms in the agreement, including the settlement sum; list of "Releasees;" jurisdiction and venue provisions; specific performance and injunctive relief provisions; and what appeared to be an attempt to foreclose Plaintiff from bringing any future claim, regardless of the nature of the claim (Doc. 31). The parties responded by amending their agreement (Doc. 33). On June 29, 2017, I denied the parties motion to approve the amended settlement agreement for the following reasons:

> (1) At page 3 of the motion "the parties agree that liquidated damages are not warranted." But, in fact, the agreement provides for the payment of liquidated damages. The Court does not understand this inconsistency.
>
> (2) Page 5 of the Amended Settlement Agreement and Release of Claims (Doc. 33-1) was not filed.

---

[2] The settlement conference was subsequently cancelled (Doc. 38).

> (3) The Court does not understand why the first sentence of paragraph 7 was included in the Amended Settlement Agreement and Release of Claims.

(Doc. 36). I gave the parties 14 days to cure the defects (Id.). The parties filed the instant motion within a few hours of receiving my Order (Doc. 37). They have cured the defects in their agreement and now, I respectfully recommend that their motion for settlement approval be granted.

## Legal Standard

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The Parties seek review to determine whether their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 113 (1946)). "Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

The settlement of FLSA claims is unlike the settlement of most other civil cases. As Judge Merryday observed in Moreno v. Regions Bank, when the court evaluates a proposed settlement it "proceeds from the kindred notions of 'fairness' and 'full compensation' to the employee." 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010). Unlike the

typical civil case "an employee cannot relinquish or modify a claim under the FLSA except in exchange for 'full compensation.'" Id. And, while the exchange of general releases, agreements to keep the terms of the settlement confidential, and other non-monetary terms are commonly included in agreements to settle most civil disputes, in FLSA cases these non-monetary terms:

> [A]ffect[] both the 'fairness' and the 'full compensation' component of a settlement. A gratuitous concession in exchange for the required payment is "unfair" because (1) the FLSA obligates the employer without exception or condition to pay the full amount owed and (2) a valuable, non-cash concession extended to the employer in exchange for otherwise "full compensation" effectively reduces the employer's payment by an amount equal to the value of the concession (and accordingly reduces the employer's payment to less than "full compensation").

Id. at 1348-49.

## Discussion

The parties have cured the defects that tainted the prior versions of their agreement and their second amended settlement agreement reflects a fair compromise of Plaintiff's FLSA claim.

### A. Settlement Sum

Defendant has agreed to pay and Plaintiff has agreed to accept $1,000.00 for unpaid wages on a claim he previously valued at $1,122.38 (Doc. 37-1 at 3).[3] Defendant has also agreed to pay Plaintiff an equal amount in liquidated damages (Id.). The parties stipulate that they have a bona fide dispute, that they were both counseled by their attorneys, and that their agreement takes into account the uncertainty and risks inherent

---

[3] The parties contend that "Plaintiff will receive *full damages* as part of the settlement ..." (Doc. 37 at 3 (emphasis added), but this statement is belied by Plaintiff's amended answers to the Court's interrogatories where he valued his claim at slightly more than the settlement sum (Doc. 28 at 2).

in litigation (Doc. 37 at 1-3). Like most settlements, this one is driven by the facts and the parties are much better informed than the Court is about the facts. No badges of fraud or overreaching are apparent and the parties are represented by experienced attorneys. Therefore, I see no reason to question the parties' judgment and respectfully recommend that the district judge find that $1,000.00 is a reasonable amount of damages for settlement purposes.

### B. Attorney's Fees

The parties represent that the $4,000.00 in attorney's fees to be paid to Plaintiff's counsel was negotiated separately from his recovery, without regard to the amount of the settlement sum (Id. at 3). This is sufficient to establish the reasonableness of the fees and that Plaintiff's recovery was not adversely affected by the amount of fees paid to his counsel. See Bonetti v. Embarq Mgmt. Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009); see also McQuillan v. H.W. Lochner, Inc., No. 6:12-cv-1586-Orl-36TBS, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013).

### Recommendation

For these reasons, I respectfully recommend that the district judge **GRANT** the parties' Second Amended Joint Motion for Approval of Settlement (Doc. 37).

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.

**RECOMMENDED** in Orlando, Florida on July 19, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record